IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TRI-STATE PROPERTY
RENTALS, LLC, et. al.,**[1]

    **Plaintiffs,**

v.                                                       **Case No. 3:23-cv-00072**

**CABELL COUNTY MAGISTRATE
COURT, et. al.,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiffs filed this *pro se* civil action on January 30, 2023, alleging that a series of crimes have been committed against them and various local and federal authorities have failed to properly investigate and prosecute those crimes. (ECF No. 2). Pending are Plaintiffs' Application to Proceed Without Prepayment of Fees and Costs and the initial screening of the Complaint by this Court pursuant to 28 U.S.C. § 1915(e)(2). (ECF Nos.

---

[1] One of the plaintiffs, Tri-State Property Rentals, LLC, ("TSPR") is identified by the West Virginia Secretary of State as a limited liability company established in December 2020 with an office address of 817 17th Street, Huntington, West Virginia. *See* West Virginia Secretary of State Online Data Services at https//apps.sos.wv.gov/business/corporations. Corporations must be represented by a licensed attorney in federal court proceedings. *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022) (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993)). Thomas Colabine, who prepared the paperwork on behalf of himself and the co-plaintiffs, is not a licensed attorney. Therefore, the undersigned **FINDS** that, as TSPR is not represented by licensed counsel, it cannot remain a party to this civil action and must be dismissed unless it retains counsel. Moreover, Colabine brings this action on behalf of his "deceased kin." Although the Fourth Circuit has not directly addressed the question of whether the executor of an estate may represent the estate *pro se* in federal court, other circuits have allowed such representation when the executor is the sole beneficiary of the estate and the estate has no creditors. *Witherspoon v. Jeffords Agency, Inc.*, 88 F. App'x 659 (4th Cir. 2004). The Complaint lacks sufficient information to determine who are the "deceased kin," whether Colabine is the executor and sole beneficiary of the estate(s) of the "deceased kin," and whether there are any creditors of the estate(s). Consequently, the undersigned **FINDS** that the propriety of Colabine's *pro se* representation of his "deceased kin" has not been established and the deceased kin are subject to dismissal as well.

1, 2). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Application to Proceed Without Prepayment of Fees and Costs be **DENIED**, as moot, and this matter be **DISMISSED** and removed from the docket of the court.

I.   **Relevant History**

Plaintiffs are Tri-State Property Rentals, LLC, ("TSPR"), a residential leasing company in Huntington, West Virginia; its owner, Thomas Colabine; and the "deceased kin of Thomas Colabine." The Complaint does not explicitly identify the deceased kin of Thomas Colabine, although the only deceased family member mentioned in the Complaint is Thomas Colabine's mother. (ECF No. 2 at 10). Plaintiffs are stated to reside in West Virginia.[2] (*Id.* at 6).

The Defendants can be grouped as follows:

1. The Cabell County Magistrate Court and Cabell County Magistrate Danne J. Vance;

2. The Huntington Police Department ("HPD"), HPD Detective Mark Parsons; HPD Detective Parson's immediate supervisor, HPD Detective Paul Minigh, HPD Sgt.

---

[2] Plaintiffs' Complaint provides two different addresses for the plaintiffs. (ECF No. 2 at 6). The Complaint states that, "for this purpose," all Plaintiffs' address is a post office box in Huntington, and that the "Official Address at the time of most occurrences is/was" an address in Arizona. (*Id.*). Because there is no evidence elsewhere in the Complaint suggesting that any of the Plaintiffs lived/existed outside of West Virginia around the time of filing, the undersigned interprets Plaintiffs' domiciles at the time of filing to be in West Virginia. The undersigned also takes judicial notice of the fact that the corporation has a Huntington address and, as of February 1, 2023, the West Virginia State Police's Sex Offender Registry listed Thomas Colabine as having a West Virginia address. *See Wallace v. New York,* 40 F. Supp. 3d 278, 286 (E.D.N.Y. 2014) (taking judicial notice of New York's sex offender registry website).

T. Backus, HPD Sgt. Backus's supervisor, HPD 911 Dispatch Officers, HPD employee M. Burnside, HPD Chief Karl Colder (collectively referred to as the "HPD defendants");

    3. The U.S. Department of Justice—the Federal Bureau of Investigation ("FBI") and FBI Special Agent Benjamin Ouellette (collectively referred to as the "FBI defendants");

    4. The Cabell County Prosecutor's Office and Assistant Prosecutor Peyton Smith; and

    5. Crystal Rose Smith-Stevens, Samuel Harrah, Stacy Harrah, Christopher Williams, Keith Watts, Brittany Damn Raye, and Sonya Starr.

Most, if not all, of the Defendants reside in West Virginia. (ECF No. 2 at 7; ECF No. 5).

Plaintiffs' Complaint lacks important details for most of the events it describes—the actions and identities of the perpetrators, locations, and dates—making it difficult to understand the exact nature of each of Plaintiffs' claims. The Complaint, entitled "Authorities Passively Endorsing and Emboldening Ongoing Crime Against Local Business", is primarily concerned with the alleged failure of law enforcement to investigate certain crimes purportedly perpetrated against Plaintiffs. (ECF No. 2 at 8). In particular, Plaintiffs allege that Crystal Smith-Stevens is the leader of a crime ring that includes Stacy Harrah, Samuel Harrah, Christopher Williams, Keith Watts, Brittany Raye, and Sonya Starr. These individuals have allegedly committed an extensive list of crimes against Thomas Colabine, his company, and Colabine's deceased mother, including assault, trespass, burglary, fraud, larceny, transfer of stolen goods, and perjury. (*Id.*). Most of these crimes targeted Thomas Colabine and TSPR, (*Id.* at 10), and it is implied that Smith-Stevens is targeting Colabine because of some prior relationship

between the two. (ECF NO. 2 at 8) ("The criminals in this ring are all friends and/or lovers and deliberately target us."). Colabine has made various efforts to seek redress for these alleged crimes, contacting the HPD and the FBI, and appearing in Cabell County Magistrate Court. (*Id.*). Plaintiffs claim that the HPD defendants, FBI defendants, and Cabell County Prosecutor's Office have all failed to adequately investigate and prosecute the crimes, and that the Cabell County Magistrate Court unlawfully "evicted" Colabine via a protective order (*Id.*).

According to the Complaint, the HPD defendants refused to investigate Smith-Stevens's crimes, (*Id.* at 9–12), failed to testify at a criminal hearing, (*Id.* at 10), and executed an unlawful court order. (*Id.* at 9, 11). This supposedly unlawful court order is the basis of Plaintiffs' claims against the Magistrate Court and Magistrate Vance; at some point, Magistrate Vance allegedly signed a protective order which resulted in Colabine being removed from his residence and place of business without legal justification. The Complaint provides minimal context for this order, implying that Smith-Stevens offered a false statement to the court which prompted the order. (ECF No. 2 at 10–11) ("There needs to be accountability as to how a person (Crystal Rose Smith) can just walk on in the courthouse, file a 100 percent fraudulent, perjured statement and then the court just signs an order immediately having the owner and sole occupant of a home removed[.]"). As a result of the protective order, Colabine was removed from his home for several days, during which Smith-Stevens ransacked the property. (*Id.*) Plaintiffs' allegations against the FBI defendants are similar to those against the HPD defendants. The Complaint alleges that Colabine contacted the FBI trying to bring Smith-Stevens and her accomplices to justice, and the investigation has seemingly stalled, as Special Agent Ouellette has stopped responding to Colabine's emails and telephone calls. (ECF No. 2

at 10, 18).

Plaintiffs' claims against the Cabell County Prosecutor's Office and Assistant Prosecutor Peyton Smith relate to a misdemeanor case against Christopher Williams. (ECF No. 2 at 10). Williams was charged with allegedly stealing some personal property belonging to Colabine; however, the case against Williams was dropped, because the investigating officer, Detective Parsons, failed to appear at a hearing. (*Id.*). Plaintiffs complain that the charges were dropped, Colabine was not given the opportunity to testify against Williams, and the prosecutor did not write a letter to explain Colabine's credit issues, which resulted from the various crimes committed by Smith-Stevens and her associates. (*Id.* at 10, 18). Finally, Plaintiffs also sue Smith-Stevens and her associates for their various crimes, alleging they have committed over 100 crimes, including significant financial fraud affecting Colabine, his mother, and TSPR, and at least one serious physical assault on Colabine. (*Id.* at 8–10, 12). The Complaint seeks money damages in the amount of $300,000. (*Id.* at 4–5).

## II. **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case is one that lacks "an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory. *Denton*, 504 U.S. at, 31-32; *Anders v. California*, 386 U.S. 738,

5

744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328. Allegations in a complaint that are "fanciful" or outlandish may be disregarded, and a complaint that relies on such allegations may be dismissed as factually frivolous. *See Denton*, 504 U.S. 25, 32-33 (1992). ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.").

Moreover, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court of the United States further clarified the "plausibility" standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), stating that the Court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as … factual allegation[s]." *Id.* at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

*Pro se* complaints must be liberally construed to allow the development of potentially meritorious claims, but the court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-

6

18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

As discussed below, on initial screening, the undersigned **FINDS** that Plaintiffs' Complaint should be dismissed in its entirely because it (1) seeks money damages from defendants who are immune from such relief; or (2) fails to state a viable federal claim; or (3) states claims over which this Court lacks subject matter jurisdiction.

### A. *Defendants Who Are Immune From Money Damages (The Cabell County Magistrate Court; Magistrate Vance; The Cabell County Prosecutor's Office; Assistant Prosecutor Smith)*

Four of the defendants are entitled to common law immunity, and Plaintiffs' claims against them must be dismissed. To begin, the Cabell County Magistrate Court and Magistrate Vance are entitled to judicial immunity. It is plain from the body of the Complaint that Plaintiffs' claims against the Magistrate Court and Magistrate Vance arise solely from judicial proceedings and from Magistrate Vance's role as a judicial officer. The law is well settled that judicial officers have absolute immunity from lawsuits related to the exercise of their jurisdiction as judges. *Pierson v. Ray,* 386 U.S. 547, 554 (1967); *Stephens v. Herring,* 827 F. Supp. 359, 365 (E.D. Va. 1993). This is true even if the judicial act allegedly was done maliciously, corruptly, or in bad faith, *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted), and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (quoting *Bradley v. Fisher,* 80 U.S. 335, 347 (1871)). "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Cleavinger,* 474 U.S. at 499-500

(quoting *Pierson,* 386 U.S. at 553–554). "Judicial immunity is an absolute immunity: it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely." *Lemon v. Hong*, No. CV ELH-16-979, 2016 WL 3087451, at *4 (D. Md. June 2, 2016) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). This immunity also applies to the court itself. *Murray v. U.S. Ct. of Appeals for Veterans Claims*, No. CIV.A. 09-2091, 2009 WL 3805241, at *1 (D.D.C., Nov. 6, 2009).

There are only two circumstances in which judicial immunity does not bar a civil action: (1) if the judge acted in the "clear absence of all jurisdiction" or (2) the judge's action was not a "judicial act." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978); *King*, 973 F.2d at 356-57. Under the first circumstance, "[a] distinction is drawn between acts that are performed in 'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with the former type of act accorded immunity." *Id.* Therefore, the question is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him, and, in answering that question, the scope of the judge's jurisdiction must be construed broadly." *Id.* at 357 (internal quotations and markings omitted).

As to the second circumstance, in determining whether the act at issue was a "judicial act," the court examines "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." *Id.* Notably, "the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her exercise of authority is flawed by the commission of grave procedural errors." *Id.* Such "errors do not render the act any less judicial, nor permit a determination that the court acted in the absence of all jurisdiction." *Id.* Plaintiffs allege that an order entered by Magistrate Vance was based

8

on perjured testimony and was misguided, but there is no suggestion that Magistrate Vance lacked jurisdiction to enter the order, and the order was unquestionably a judicial action. (ECF No. 2 at 9, 11). Therefore, the undersigned **FINDS** that the Cabell County Magistrate Court and Magistrate Vance are immune from suit, and Plaintiffs' claims against them must be dismissed.

The Cabell County Prosecutor's Office and Assistant Prosecutor Smith are likewise immune under the doctrine of prosecutorial immunity. Prosecutors are afforded absolute immunity from civil liability for actions they take as officers of the court within the scope of their prosecutorial duties. *Van De Kamp v. Goldstein,* 555 U.S. 335, 340-41 (2009). This immunity applies to conduct in furtherance of a variety of advocacy functions; such as, reaching a decision to pursue or dismiss charges; initiating prosecution; presenting the State's case, participating in courtroom hearings and plea negotiations, evaluating evidence and witnesses, making professional judgments, and taking actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 416 (1976). When performing his or her official functions, a prosecutor is afforded immunity even if he or she "acted with an improper state of mind or improper motive." *Schmueli v. City of New York,* 424 F.3d 231, 237 (2nd Cir. 2005). The only activities taken by a prosecutor that are not entitled to absolute immunity are administrative and investigatory actions that are not connected with the judicial phase of the criminal process. *Van De Kamp,* 555 U.S. at 342-43.

Here, Plaintiffs criticize Assistant Prosecutor Smith for not charging certain defendants with felony offenses instead of misdemeanors and for resolving the charges without jail time or restitution when the prosecution's witness failed to appear at the hearing. Plaintiffs further complain that Smith refused to write a letter to assist Colabine

in clearing up some credit issues related to the crimes. (ECF No. 2 at 16-17). Clearly, these actions fall squarely within the advocacy functions for which the Prosecutor's Office and Assistant Prosecutor Smith are entitled to immunity. Accordingly, the undersigned **FINDS** that Plaintiffs' claims against the Cabell County Prosecutor's Office and Assistant Prosecutor Smith are barred by prosecutorial immunity and should be dismissed.

### B. Failure to State a Claim (HPD Defendants and FBI Defendants)

The undersigned construes Plaintiffs' allegations against the HPD defendants as claims made pursuant to 42 U.S.C. § 1983, and the allegations against the FBI defendants as claims made pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging that these law enforcement defendants violated Plaintiffs' due process rights. The Complaint is construed in this manner, because Plaintiffs fail to identify a cause of action in their pleading, and no other cause appears applicable to the claims asserted. By considering Plaintiffs' Complaint in this light, the Court has original jurisdiction over Plaintiffs' claims against the law enforcement defendants under the Court's federal question jurisdiction. Nonetheless, upon conducting the initial screening of the allegations, the undersigned **FINDS** that Plaintiffs fail to state a plausible claim against these defendants.

A claim under 42 U.S.C. § 1983 has two essential elements: there was a violation of the plaintiff's rights under the Constitution or laws of the United States, and the alleged violation was committed by a person acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). A *Bivens* claim is a common law counterpart to § 1983, which provides a remedy for constitutional violations by persons acting under color of federal law—though, importantly, *Bivens* claims extend to fewer

10

contexts than § 1983 claims. *See Egbert v. Boule*, 142 S. Ct. 1793 (2022). Plaintiffs allege that the HPD defendants refused to investigate Smith-Stevens's crimes, (ECF No. 2 at 9–12), failed to testify at a criminal hearing, (*Id.* at 10), and executed an allegedly unlawful court order, (*Id.* at 9, 11), and that the FBI defendants failed to adequately investigate Smith-Stevens's crimes, with Special Agent Ouellette failing to respond to Colabine's telephone calls and emails. (*Id.* at 10, 18).

The claims against the FBI defendants must be dismissed for several reasons. The FBI, as an agency of the United States, cannot be sued in a *Bivens* action, and for that reason alone, must be dismissed. *FDIC v. Meyer,* 510 U.S. 471, 486 (1994) (declining to extend *Bivens* remedy to federal agencies). Although a case under *Bivens* may be brought against Special Agent Ouellette, the specific claims asserted by Plaintiffs cannot, because the Fourth Circuit has declined to extend *Bivens* to Fifth Amendment due process claims. *Annappareddy v. Pascale*, 996 F.3d 120, 134 (4th Cir. Apr. 26, 2021). Even if due process claims could be brought under *Bivens,* a cause of action based on the FBI defendants' failure to investigate criminal charges at Plaintiff's request would not withstand initial review, because there is no constitutional right to an investigation. *Detar v. Metting*, No. 2:14-CV-01600, 2015 WL 3457499, at *1 (W.D. Pa. May 29, 2015) ("[F]ederal law does not recognize a claim based on an alleged failure by the FBI to investigate a crime.") (citing *Terrell v. Attorney General,* No. 98–219, 1998 WL 574387, at *3 (N.D. Cal. Aug. 31, 1998), *aff'd sub. nom.* 108 F.3d 515 (9th Cir.1999)); *Longi v. New York*, No. CV-02-582, 2006 WL 8441210, at *25 (E.D.N.Y. June 26, 2006) (dismissing *Bivens* claims against FBI officials who failed to investigate plaintiff's complaint of fraud), *aff'd*, 363 Fed. Appx 57 (2d Cir. 2010); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a

11

constitutional right, to an investigation."). Therefore, to the extent that Plaintiffs allege a violation of their due process rights, the undersigned **FINDS** that Plaintiffs can only pursue a due process claim against the state law enforcement officers, under § 1983, and their claims against the FBI defendants must be dismissed.

The primary claim against state law enforcement, and the principle claim of the entire Complaint, is that the HPD defendants failed to adequately investigate the litany of crimes committed by Crystal Smith-Stevens. However, as stated above, this claim has no arguable basis in law, because there is no constitutional right to a police investigation. Moreover, law enforcement officers are not *constitutionally* required to protect the public from crime. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its substantive manifestations.") (internal quotations omitted). From this premise, it follows that a crime victim has no constitutional entitlement to any police investigation, much less a thorough or timely one. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015); *Smith v. McCarthy,* 349 Fed. Appx. 851, 859 (4th Cir. 2009); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("We can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."). Accordingly, the HPD's failure to investigate

12

crimes cannot be the basis of a § 1983 suit. Plaintiff also complains that Detective Parsons failed to testify at a criminal hearing. (ECF No. 2 at 10). Although witnesses subject to a subpoena have a duty to testify, *Trump v. Vance*, 140 S. Ct. 2412, 2431 (2020), that duty to testify does not give crime victims an enforceable individual right to have witnesses testify on their behalf. These alleged omissions by law enforcement— the failure to investigate and the failure to testify—do not give rise to a civil cause of action. If a crime victim wants public officials to do more to protect the public, the proper avenue for redress is political action, not judicial intervention.

The only other asserted due process violation lies in the HPD's execution of the protective order, which Plaintiffs claim was based on perjured testimony by Smith-Stevens. Plaintiffs allege that HPD officers "could clearly see such a court Order was misguided at best, [but] the officer stated he was bound to duty of the courts Order and no authority to contest it" and he told Colabine to "take it up with the Magistrate in a week." (ECF No. 2 at 11). Plaintiffs claim that the protective order forced Colabine's removal from his home and allowed Smith-Stevens full access to the property, which gave her five days to liquidate everything in the home, which Plaintiffs describe as "Burglary x 2 by way of court Order of protection." (ECF No. 2 at 12). Even if the order issued by Magistrate Vance was erroneous and based on perjured testimony, law enforcement officers have quasi-judicial immunity for the execution of a facially valid court order. *Roland v. Phillips*, 19 F.3d 552, 557 (11th Cir. 1994); *Ward v. Plymale*, No. CIV.A. 3:12-06186, 2013 WL 6164277, at *16 (S.D.W. Va., Nov. 25, 2013); *Kendrick v. Cavanaugh*, No. CIV. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md., July 14, 2011), *aff'd*, 470 Fed. Appx 194 (4th Cir. 2012). Nothing in the Complaint suggests that the HPD defendants knew the order was invalid or defective, and Plaintiffs have not alleged

that the protective order appeared invalid on its face. Therefore, the undersigned **FINDS** that Plaintiffs have failed to state a plausible federal claim against the HPD defendants and the Complaint should be dismissed against them.

### *C. Lack of Subject Matter Jurisdiction (Crystal Smith-Stevens, Samuel Harrah, Stacy Harrah, Christopher Williams, Keith Watts, Brittany Damn Raye, and Sonya Starr)*

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

As part of its initial screening, the court should determine whether it has subject matter jurisdiction over the claims asserted by Plaintiff. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure."). The Court should *sua sponte* dismiss a case when subject matter jurisdiction is lacking. *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) ("It is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte*, to ensure that it does not decide controversies beyond its authority."). There is no presumption that a federal district court has subject matter jurisdiction over a dispute. *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 399 (4th Cir. 1999). Instead, the existence of jurisdiction depends upon the allegations contained in the complaint. *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298

U.S. 178 (1936)) (holding "the party who seeks the exercise of jurisdiction in his favor … must allege in his pleadings the facts essential to show jurisdiction"). The mere assertion of a federal claim is insufficient to establish subject matter jurisdiction. *Davis*, 856 F.2d at 650.

Original subject matter jurisdiction in the United States District Courts exists in one of two circumstances: (1) when a "federal question" is presented, or (2) when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. If jurisdiction is premised upon on a federal question, the plaintiff must "assert a *substantial* federal claim." *Lovern*, 190 F.3d at 654 (quoting *Davis*, 856 U.S. at 650). The "doctrine of substantiality is especially important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Id.* at 655 (citing *Davis*, 856 U.S. at 651). When jurisdiction is based on diversity of citizenship, there must be complete diversity, which means that no plaintiff and no defendant in the case are citizens of the same State. Consequently, in a case with one plaintiff and more than one defendant, the presence of a single defendant from the same State as the plaintiff "deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, (2005) (citations omitted).

In this case, all of the claims presenting a federal question have been eliminated either because the defendants are immune from suit, or the Complaint fails to state a plausible claim under federal law. Accordingly, this Court lacks original jurisdiction over the Complaint unless the remaining claims fall within the Court's diversity jurisdiction. Clearly, diversity jurisdiction does not exist here, because Thomas Colabine, TSPR, and most, if not all, of the defendants are citizens of West Virginia.

15

If a court has neither federal question jurisdiction nor diversity jurisdiction over a claim, it may only adjudicate the claim if it is subject to the court's supplemental jurisdiction under 28 U.S.C. § 1367. *Mebane v. GKN Driveline North America, Inc.*, 499 F. Supp.3d 220, 231 (M.D.N.C. 2020). A court has supplemental jurisdiction over claims that form part of the same case or controversy as claims within the court's original jurisdiction, if they arise from a common nucleus of operative fact. 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Plaintiffs' claims against the remaining defendants are arguably part of the same case or controversy as Plaintiffs' federal question claims, given that all of the claims relate to the alleged crimes of the remaining defendants. Courts generally grant supplemental jurisdiction "for two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Mebane,* 499 F. Supp.3d at 231 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994)).

However, a court may decline to exercise its supplemental jurisdiction if it has dismissed all claims within its original jurisdiction. 28 U.S.C. § 1367(c). It is especially appropriate to decline to exercise supplemental jurisdiction where Plaintiffs' federal claims have been dismissed very early in the litigation. *See Equal Emp. Opportunity Comm'n v. Greenhouse Enter., Inc.*, No. 3:14-CV-569-RJC-DCK, 2016 WL 1441206, at *2 (W.D.N.C. Apr. 12, 2016) ("However, where the main federal action has been settled or dismissed prior to trial, the Supreme Court has cautioned federal courts against retaining jurisdiction over the non-jurisdictionally sound claims, absent concerns of judicial economy, convenience, and/or fairness to litigants.") (citing *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *also Roseboro v. Winston-Salem/Forsyth Cnty. Sch. Bd. of Educ.*, No. 1:14CV455, 2014 WL 5304981, at *7 (M.D.N.C. Oct. 15, 2014) ("In particular, upon the dismissal of all federal-law claims in the early stages of the litigation, remand to state court best promotes the values of economy, convenience, fairness, and comity.") (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U .S. 343, 350 n. 7 (1988)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... judicial economy, convenience, fairness, and comity will point toward declining to exercise jurisdiction over the remaining state-law claims."). Plaintiffs may have valid tort claims against the remaining defendants for the harms they have allegedly caused, but those claims are best pursued in state court; particularly, as it appears from the Complaint that various criminal cases remain open and investigations against the remaining defendants are ongoing. Therefore, the undersigned **FINDS** that this Court lacks original subject matter jurisdiction over Plaintiffs' remaining claims and should decline to exercise supplemental jurisdiction over Plaintiff's state-based claims.

### IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Plaintiffs' Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), be **DENIED**, as moot, and the Complaint (ECF No. 2) be **DISMISSED** and removed from the docket of this Court.

Plaintiffs are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiffs shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiffs.

**FILED**: March 20, 2023

Cheryl A. Eifert
United States Magistrate Judge